UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROYAL HOLDINGS TECHNOLOGIES CORP., <br><br> Plaintiff, <br><br> v. <br><br> IP VIDEO MARKET INFO INC., <br><br> Defendant. | Case No. 2:20-cv-04093-SB-PLA <br><br> ORDER GRANTING MOTIONS FOR ENTRY OF ORDER AND ATTORNEYS' FEES AND COSTS [DKT. NO. 83] |

  Plaintiff Royal Holdings Technologies Corp. released a product at the beginning of the COVID-19 pandemic that purported to detect individuals' temperatures remotely. After Defendant IP Video Market Info Inc. published articles that were skeptical that Plaintiff's product worked as advertised and claimed, among other things, that its marketing was misleading, Plaintiff brought this suit. The Court granted in part Defendant's motion to strike the First Amended Complaint (FAC) pursuant to California's anti-Strategic Litigation Against Public Participation (anti-SLAPP) statute and motion to dismiss, which dismissed all of Plaintiff's claims except for its defamation claim. Dkt. No. 52. On appeal, the Ninth Circuit reversed the Court's finding that Plaintiff's defamation claim could proceed. Dkt. Nos. 68, 69. Defendant now moves for entry of an order granting its motions to strike and dismiss the case in its entirety and for attorneys' fees under the anti-SLAPP statute. Dkt. No. 83. Plaintiff has failed to appear or to oppose the motion. The Court finds this matter suitable for decision without oral argument and vacates the March 17, 2023 motion hearing. Fed. R. Civ. P. 78; L.R. 7-15. Since none of Plaintiff's claims can proceed in light of the Ninth Circuit's ruling and Defendant is entitled to attorneys' fees, the motion is granted.

1

I.

Plaintiff filed this case on May 4, 2020, alleging several state law claims. Dkt. No. 1. Defendant moved to strike under the anti-SLAPP statute and to dismiss the complaint. Dkt. No. 20. Plaintiff filed the FAC, which mooted Defendant's motion. Dkt. Nos. 23, 24. Defendant filed new motions to strike and dismiss, which the Court granted in part and denied in part. Dkt. Nos. 33, 52. The Court largely allowed Plaintiff's defamation claim to proceed, finding that Plaintiff met its minimal burden at the anti-SLAPP stage of demonstrating the defamatory nature of almost all of Defendant's statements. Defendant appealed the Court's ruling. Dkt. No. 53.

While the appeal was pending, Plaintiff's counsel moved to withdraw. Dkt. No. 57. The Court denied the motion without prejudice. Dkt. No. 61. Counsel renewed the motion, which the Court again denied without prejudice. Dkt. Nos. 62, 67. The Ninth Circuit reversed the Court's ruling on Defendant's motions to strike and dismiss to the extent that the Court permitted Plaintiff's defamation claim to survive. Dkt. Nos. 68, 69.

Plaintiff's counsel then again renewed its motion to withdraw, which the Court granted. Dkt. Nos. 71, 77. The Court advised Plaintiff that as an organizational entity it cannot appear pro se and directed Plaintiff to notify the Court whether it has retained or intends to retain trial counsel. Dkt. No. 77. The Court warned Plaintiff that failure to retain counsel could result in entry of an order awarding Defendant attorneys' fees. *Id*. No counsel for Plaintiff has appeared, nor did Plaintiff file a status report as ordered. This unopposed motion followed.

II.

The Court first considers Defendant's request for entry of an order granting its anti-SLAPP motion to strike and dismissing the FAC in its entirety with prejudice. Since the Ninth Circuit found that Plaintiff's defamation claim cannot survive Defendant's anti-SLAPP motion and this Court dismissed Plaintiff's other claims,[1] Defendant's anti-SLAPP motion is GRANTED and the FAC is DISMISSED with prejudice. *See Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1140 (C.D. Cal. 2015), *aff'd*, 853 F.3d 1004 (9th Cir. 2017) (denying leave to

---

[1] Plaintiff also conceded on appeal that its other claims are derivative of its defamation cause of action.

amend where the plaintiffs' amended complaint was stricken under California's anti-SLAPP statute).

### III.

#### A.

The Court now turns to Defendant's request for an award of attorneys' fees and costs. "[A] prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs." Cal. Code Civ. P. § 425.16(c)(1). The fee provision applies only to the motion to strike, not to the entire action. *S.B. Beach Props. v. Berti*, 39 Cal. 4th 374, 381 (2006). A prevailing defendant is also entitled to fees and costs incurred in appealing a trial court's anti-SLAPP order and in bringing a motion for attorneys' fees. *Metabolife Intern., Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1222 (S.D. Cal. 2002).

"[A] court assessing attorney fees begins with a touchstone or lodestar figure, based on the careful compilation of the time spent and reasonable hourly compensation of each attorney involved in the presentation of the case." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131–32 (2001) (cleaned up). In determining reasonable compensation, courts "must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation." *Id*. at 1132 (internal quotation omitted). "The lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court" based on a variety of factors. *Id*.

To calculate the "lodestar," the court must multiply the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work. *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999). The court may raise or lower the lodestar based on several factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the

  professional relationship with the client; and (12) awards in similar cases.

*Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1007 n.7 (9th Cir. 2001). However, the lodestar is strongly presumed reasonable and adjustments are "the exception rather than the rule." *Id*. at 1007 (internal citation omitted).

B.

  Defendant seeks $451,025.92 in fees. The fees were incurred by two entities: Gibson, Dunn & Crutcher LLP (Gibson Dunn) and the Reports Committee for Freedom of the Press (Reporters Committee). The Reporters Committee is a nonprofit organization that works on a pro bono basis and partners with law firms to expand the number of matters it can work on. Defendant seeks $136,545 in fees for Gibson Dunn's work and $314,480.92 in fees for the Reporters Committee's work. Gibson Dunn timekeepers spent 185.1 hours on this case, including 31.9 hours by partner Anne M. Champion, 53.4 hours by associate Sarah L. Segal, 76.2 hours by associate Meredith S. Simons, and 23.6 hours by senior paralegal Daniel K.L. Tom. Dkt. No. 83-2 (Champion Decl.) ¶ 8. Reporters Committee timekeepers spent 498.65 hours on this case, including 143.2 hours spent by Deputy Executive Director and Legal Director Katie Townsend, 145.4 hours spent by senior staff attorney Jennifer A. Nelson, 91.5 hours spent by Media Litigation Fellow Charlie Hogle, and 118.55 hours spent by legal fellow Lyndsey Wajert. Dkt. No. 83-1 (Townsend Decl.) ¶ 23.

  Based on this unopposed record, the Court finds these hours to have been reasonably spent on filing two anti-SLAPP motions and an appeal in this case. Defendant submits detailed time records that document the hours Defendant's counsel spent working on the case. Champion Decl. Ex. 4; Townsend Decl. Ex. B. These time entries reflect work that attorneys at Gibson Dunn and the Reports Committee spent reviewing Plaintiff's initial complaint and FAC, preparing anti-SLAPP motions in response to each complaint, and litigating an appeal of the Court's anti-SLAPP order.[2]

---

[2] Defendant prudently does not seek fees for time spent seeking dismissal of Plaintiff's Lanham Act claim and time other Gibson Dunn attorneys spent participating in practice arguments with the attorneys assigned to this matter in preparation for oral argument.

  The Court now evaluates the hourly rates defense counsel asserts.  The effective hourly rates for Gibson Dunn's timekeepers on this matter range from $446.60 to $1,094.36.[3]  Champion Decl. ¶ 8.  The requested rates for Reporters Committee timekeepers are based on the Legal Services Index-updated Laffey Matrix (LSI Laffey Matrix).  Townsend Decl. ¶ 21, Ex. A.  The LSI Laffey Matrix sets forth hourly rates for attorneys working on complex cases in Washington, D.C. and is updated annually based on changes in the Department of Labor's Consumer Price Index.  Based on the experience of the Reporters Committee attorneys who worked on this case, the LSI Laffey Matrix indicates that the applicable hourly rates range from $413 to $829.  Defendant has adjusted these rates downward by 5% in light of evidence from the Bureau of Labor Statistics that the median hourly wage for lawyers in Los Angeles is 5% lower than that for lawyers in Washington, D.C.  Accordingly, the asserted rates for Reporters Committee timekeepers range from $392.35 to $787.55.  This downward adjustment is "a rational mechanism for adjusting the Laffey Matrix rates to [Los Angeles's] market." *Trujillo v. Singh*, No. 16-cv-01640-LJO, 2017 WL 1831941, at *2 (E.D. Cal. May 8, 2017).  While the rates for both Gibson Dunn and Reporters Committee timekeepers appear to be high, the Court accepts them in light of Plaintiff's non-opposition.  See *Fernandez v. Penna*, No.: 2:19-cv-05056-SB, 2021 WL 4353116, at *1 (C.D. Cal. Mar. 15, 2021) (approving high rates on an "unchallenged and unopposed record").

  Multiplying the timekeepers' claimed hours by the hourly rates adjusted as described above yields lodestar amounts of $136,545 for Gibson Dunn and $314,480.92 for the Reporters Committee.  In light of the strong presumption that the lodestar is reasonable, and in the absence of any opposition, the Court awards Defendant its requested fees.

C.

  Defendant also requests an award of $5,441.80 in litigation costs.  Defendant submits documentation supporting these expenses.  Champion Decl. Ex. 7.  The

---

[3] Gibson Dunn represented Defendant on a "modified fee basis," with Defendant agreeing to pay Gibson Dun $100,000 in fees in connection with bringing an anti-SLAPP motion.  Champion Decl. ¶ 5.  Since the case ultimately involved a second anti-SLAPP motion and an appeal, the fees incurred exceeded the agreed-upon amount.  The total fees Defendant paid Gibson Dunn is $136,545, which is the amount that Defendant seeks for Gibson Dunn in this motion.  This amount is less than the total value of the time spent by Gibson Dunn attorneys on this case.  *Id*.

entries reflect research and printing charges, filing fees, and courier fees. These are ordinary litigation expenses and the amount is reasonable given the length of this case and the fact that it involved two anti-SLAPP motions and an appeal. Accordingly, the Court awards Defendant its requested costs.

IV.

For the foregoing reasons, the Court GRANTS Defendant's motion for attorneys' fees and costs, and awards Defendant $451,025.92 in attorneys' fees and $5,441.80 in costs. Judgment will be entered separately.

Date: March 13, 2023

_____
Stanley Blumenfeld, Jr.
United States District Judge